IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMY BERECKY,                                    CIVIL DIVISION

                Plaintiff,                      Case No.   2:21-CV-610

        v.

SENNECA HOLDINGS,

                Defendant.

## COMPLAINT AND JURY DEMAND

A.      ***Preliminary Statement***

1.      The plaintiff Amy Berecky brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination and retaliation based upon her gender. A jury trial is demanded.

B.      ***Jurisdiction***

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.      On or about October 26, 2020, the plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00057.

4.      The EEOC issued a Notice of Right to Sue on February 23, 2021.

5.      This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.      ***The parties***

6.      The plaintiff is an adult individual who resides at 218 Country Club Road, Washington, PA 15301 (Washington County).

7.     The defendant Senneca Holdings ("Senneca" or the "company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.  The defendant maintains a place of business at 5350 Campbells Run Road, Pittsburgh, PA 15205 (Allegheny County).

8.     At all times material, the defendant employed more than fifteen employees.

9.     The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.     ***Factual Background***

10.     The plaintiff was employed by Senneca (and its predecessor, TMI, LLC) as Customer Service/Inside Sales from June 15, 2015 through December 27, 2019 at which time her employment was terminated.

11.     Senneca is in the business of manufacturing and selling specialty doors for industrial and commercial use.

12.     The plaintiff's duties as Customer Service/Inside Sales involved answering phones, taking and generating orders, working on blue prints to manufacture products to the customers' needs and specifications and managing inventory.

13.     At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.  The quality of the plaintiff's work and the dedication to her job was evidenced by salary increases awarded by management and customer appreciation letters and correspondence.

14.     At the time of her termination, Jason Janidlo, Customer Service Manager, was the plaintiff's supervisor.   The Vice President of the company was Mark Leszczynski (his employment with Senneca began in the spring of 2019).

15.     Starting after his arrival in the spring of 2019, Leszczynski and some co-workers subjected the plaintiff (and other female employees) to a sexually hostile work environment that involved sexist comments, conduct and treatment.  Some examples follow:

(a)     Early in his tenure with the company, Leszczynski was at a business dinner with Gary Schwer, House Accounts Manager and, at the time, one of the plaintiff's supervisors.  Leszczynski asked Schwer if they were going to go to a strip club after dinner, and, if so, should he bring 1-dollar bills.  Schwer was surprised by Leszczynski's inappropriate statement and recounted the episode to the plaintiff.  The plaintiff soon found out that Leszczynski did not limit his sexist outbursts to just "the boys" who worked for and with him at the company, but rather, this was integral to his "management style".

(b)     During his first one-on-one conversation with the plaintiff, Leszczynski asked her if she was "local", and when she responded in the affirmative, he explained that his wife was in Poland for six months and that he needed a periodontist and a masseuse.  Leszczynski went on at length about his interest in finding a masseuse, telling the plaintiff that he had a "room in his house specifically designed for this purpose."  By the way that Leszczynski was going on and on, she came away with the feeling that he was asking for an escort or prostitute.

(c)     On one evening, the plaintiff was working late at the office.  Brandon Wrublesky, Customer Service/Inside Sales, and Leszczynski were also at the office.  Leszczynski asked the plaintiff her age and the plaintiff responded.  He said, "oh, we're around the same age" and that the plaintiff should remember "this" rap song.  He sent the song to Wrublesky via his cellphone and Wrublesky started blasting it.  The song was "We Want Pussy" by 2 Live Crew.

(d)     Leszczynski took the plaintiff to lunch one day at a nearby restaurant.  During lunch, Leszczynski started discussing abortion and told the plaintiff that he was against abortion and agreed with the President of Mexico that women "should just keep their legs closed".

(e)     In the summer of 2019, the plaintiff had a conversation with Alyson Puskar and Jerry Meanor, warehouse managers.  The plaintiff told them that Leszczynski' sex-related comments made her feel uncomfortable.  Puskar said that her experience with him was the same.  She said that Leszczynski told her recently that he had taken a business flight and that he was upset that none of the young girls on the flight were paying any attention to him.  He wondered if it was because he was "too old" for them.  Puskar told the plaintiff that, and some of the other things he said to her, made her feel extremely uncomfortable.  Meanor added that he had

3

been witness to some of those conversations between Leszczynski and Puskar and that it made him feel uncomfortable as well.

(f)     In the summer of 2019, Leszczynski told the plaintiff to make arrangements for a business dinner with Akhtar Hasan (male) the operations manager for Assa Abloy, one of her top accounts. Alyson Puskar and Rick Pertini, a manager at Senneca were also supposed to attend, in addition to the plaintiff and Leszczynski. Shortly before the dinner, Leszczynski had Michael Roarty, her manager at the time, called her and instructed her to not show up for the dinner. Further, the restaurant sent emails to the plaintiff and Puskar advising them that they were removed from the "guest list". The only people that ended up attending the dinner were male; obviously, Leszczynski wanted this to be a "boys night out" and did not want his female employees to be there.

(g)     The plaintiff had been involved in a relationship with Wrublesky for a couple of months in 2019, but the plaintiff had broken it off. Wrublesky did not take this well. He regularly called the plaintiff "a fat whore who can't do her job" on the plant floor in the presence of many co-workers and used other gender-based names and obscenities. The plaintiff talked to Leszczynski about the situation and told him that Wrublesky's gender-based name-calling was humiliating, demeaning and was eroding her authority with male co-workers. Leszczynski was not concerned with the gender-based harassment being inflicted by Wrublesky and did not take any action to confront him directly about this blatant violation of company policies. Instead, he told the plaintiff to patch it up with Wrublesky because he and she were his top two workers.

(h)     Leszczynski convened a meeting to discuss ongoing customer complaints with the delivery of products. The company was not purchasing materials to complete products ordered by the customers, but the employees were instructed to continue taking orders and money and to lie about delivery times. The customers were getting irate. The employees at the meeting told Leszczynski that the customers had every right to be upset and that the company should change its practices and be more transparent with the customers. This angered Leszczynski. He said, "we should have big BDSM posters on the wall, Bondage, Dominance, Submission and Sadomasochism because we are being beat down by our customers". He then abruptly walked out of the meeting.

16.     The events that led to the plaintiff's discriminatory discharge follow.

17.     On December 11, 2019, the plaintiff met Janidlo, Pam Farquhar, Customer Service Representative, Terri Tabarella, Customer Service Representative and Paul Sedlock, Account Manager, for drinks after work. The purpose was to celebrate the plaintiff's and

4

Farquhar's birthday.  The plaintiff was there for less than thirty minutes; she left so soon because she needed to go home to take care of her daughter.

18.    The following week, Janildo called the plaintiff into his office and told her to be careful because she was being watched very closely by Leszczynski.  The plaintiff tried to get more details about what was going on, but Janildo said, "just watch your back" and that Leszczynski had it in for her.

19.    On December 27, 2019, Mancusa told the plaintiff that her employment was being terminated effectively immediately because of allegations that, during the get together on December 11, the she said that she wanted to have sex with Janildo.

20.    The allegation against her was fabricated and untrue.  It was not brought to her attention between December 12 and her termination.  She was never asked to give her version of events.  Further, and significantly, Janildo did not talk to her about the alleged conversation that she had with any of the co-workers in attendance.  Further, the plaintiff was not warned about any other violations of company rules or policies that could lead to her termination before the actual termination.

21.    The plaintiff's employment was terminated as a result of this trumped up and false allegation.

22.    The reason given for the plaintiff's termination was nothing more than a pretext and the real reason why she was fired was because of her gender and in retaliation for raising complaints about sexual harassment with management.

## FIRST CAUSE OF ACTION

23.    The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

24. The plaintiff is female and thus is protected against harassment and discrimination on the basis of her gender under Title VII.

25. The plaintiff was qualified for her position.

26. As detailed above, the plaintiff was harassed in the workplace because of her gender.

27. As detailed above, the plaintiff was retaliated against for making complaints about sexual harassment.

28. The defendant's harassment and discharge of the plaintiff were in violation of Title VII because it was based upon her gender.

29. Further, the plaintiff's employment was terminated in retaliation for reporting to management that she was being subjected to sexual harassment.

30. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII, including attorney's fees and costs.

Respectfully submitted,

/s/ Michael J. Bruzzese

Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: May 7, 2021